118 F.3d 106
 74 Fair Empl.Prac.Cas. (BNA) 955,
71 Empl. Prac. Dec. P 44,852
Alvin D. SCHWAPP, Jr., Plaintiff-Appellant,
v.
TOWN OF AVON; Philip K. Schenck; Thomas A. Transue;
Harold T. LeMay, Jr.; Paul A. Olson; Steven A. Howe;
James A. Martino, Jr.; Richard W. Hines; William Shea, II;
S. Edward Jeter; Joseph C. Woodford; Beatrice Murdock
France; and Modesto F. Brunoli, Defendants-Appellees.
 No. 1629, Docket 96-9397.
 United States Court of Appeals,
Second Circuit.
 Argued May 2, 1997.
Decided July 2, 1997.
 
 John C. Brittain, University of Connecticut School of Law, Hartford, CT (M. Hatcher Norris, Butler, Norris & Gold, Hartford, CT, Sherman R. McGrew, Robert Stone, Legal Interns, of counsel), for Plaintiff-Appellant.
 Scott M. Karsten, Sack, Spector & Barrett, West Hartford, CT, for Defendants-Appellees.
 Before: MINER and CALABRESI, Circuit Judges, and SHADUR, District Judge.*
 MINER, Circuit Judge:
 
 
 1
 Plaintiff-appellant Alvin D. Schwapp, Jr. appeals from a summary judgment entered in the United States District Court for the District of Connecticut (Covello, J.) in favor of defendants, the court having determined that plaintiff failed to raise a triable issue on his claim of a violation, based on a hostile work environment, of the provisions of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and that plaintiff also failed to raise a triable issue with respect to his claims of violations of 42 U.S.C. §§ 1981 and 1983. In making this determination, the court excluded from its consideration racially-hostile comments and conduct that did not occur in the plaintiff's presence, as well as affidavits of fellow officers that the court found vague and conclusory.
 
 
 2
 For the reasons that follow, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 3
 Schwapp was the first African-American employed as a police officer by defendant-appellee Town of Avon, and was the only African-American police officer at the Avon Police Department (the "APD") for the entire duration of his employment. Schwapp was hired in February of 1992 and, after several months of training, began work at the APD on June 26, 1992. He resigned on February 18, 1994, and asserted that his resignation was impelled by twelve incidents of racially derogatory comments and acts in the workplace. Schwapp alleges that these incidents demonstrated a hostile work environment, and thus that he has stated a claim for discrimination under Title VII.
 
 
 4
 The four central incidents all occurred in Schwapp's presence. First, in August of 1992, defendant-appellee Sergeant Steven Howe, who at that time was a patrolman with the APD, stated that he was dealing with a "nigger bitch from Hartford who was beating the shit out of her kids." (Compl. p 22(a).) Another officer who was present reported the incident to a superior, and was advised that the incident was reported to defendant-appellee Captain Paul A. Olson. Second, in the fall of 1992, Howe was in a break room watching a televised football game when a black player celebrated after a touchdown. Howe asked, "why do they have to do that jungle dance every time they score a touchdown?" (Id. p 22(b).) Third, in March of 1993, defendant-appellee Sergeant Thomas Transue handed Schwapp a copy of a racially offensive joke involving a play on the word "nigger". Fourth, in May of 1993, Schwapp met with defendant-appellee Lieutenant Harold T. LeMay, Jr, the third-highest-ranking officer in the APD, to discuss the alleged racial hostility in the department, and the conduct of Howe and Transue in particular. LeMay advised Schwapp that he "should not expect his fellow workers to exhibit the same courtesy" as Schwapp did to them, and should not be "so sensitive." (Id. p 22(f).) LeMay explained that Schwapp "had to understand the history of an all white male department and that at one time all the crimes in Avon were committed by blacks and that guys started to stereotype people." (Id.)
 
 
 5
 A second group of incidents involved racial comments that Schwapp did not experience first-hand, but that were relayed to him by fellow officers during his employment at the APD. First, fellow officers informed Schwapp that Transue stated at a roll call, "watch out for the nigger at 48," referring to a black man who had begun work at a gas station in Avon. (Id. p 22(q).) Second, fellow officers told Schwapp that Transue had instructed patrol officers to target black and hispanic people for traffic stops during the summer months on the "Barkhamsted Express," which refers to a route from Hartford, Connecticut to the Barkhamsted recreation area. Third, a fellow officer advised Schwapp that Sergeant Richard Kolb told a racial joke during roll call, and when the officer raised an objection to Howe, who was in attendance, Howe responded that Schwapp "was not present to be offended." (Id. p 22(p).) Fourth, Officer John Chevalier informed Schwapp in October of 1993 that LeMay had distributed to Chevalier and another officer a written joke that involved criminal behavior and used the names Johnny, Jose, Rufus, Jerome, Willie, Raoul and Hector. Defendants-appellees Police Chief James A. Martino, Jr. and Town Manager Philip K. Schenck conceded that the joke was racially derogatory. Last, officers told Schwapp that Transue told a dispatcher, who was working during the day shift instead of his usual night shift, "I see you are working white man's hours." (Id. p 22(l ).)
 
 
 6
 A third group of incidents occurred during Schwapp's employment but involved hostile comments directed at other minority groups. In the first such incident, a fellow officer told Schwapp that Transue said during roll call: "We have a nest of camel jockeys over at 156 West Main," referring to persons of Middle-Eastern origin. (Id. p 22(m).) Second, fellow officers told Schwapp that in the summer of 1993, Howe stated during a training session on the use of capsicum, a pepper spray, "you have capsicum if you stop a car ... and it is a car load of Puerto Ricans."[1] (Id. p 22(j).)
 
 
 7
 The last incident relayed to Schwapp apparently occurred prior to Schwapp's employment by the APD.[2] According to fellow officers, an officer who is of Italian ancestry and has dark skin was referred to as the "big nigger" by APD officers. (Boyko Aff. p 17.)
 
 
 8
 Schwapp apparently sought and received counselling during October of 1993 from the Town of Avon Employee Assistance Program. According to the counsellor's report to Schwapp's attorney, Schwapp stated that he was "the object of racial stress and harassment, and that the prejudicial attitude was rampant in the department not only against him, but also against civilians." (J.A. 134.)
 
 
 9
 Schwapp filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC") on October 29, 1993. Schwapp asserts that he finally resigned on February 18, 1994, because he no longer could endure the racially hostile work environment. He received a right to sue letter from the EEOC on August 6, 1994, and filed a complaint in the district court on September 8, 1994.
 
 
 10
 Schwapp's complaint pleaded a number of federal and state claims, including violations of his federal rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII. Schwapp named as defendants the Town of Avon, six present or former members of the Avon Town Council, and Schenck, Martino, Olson, LeMay, Howe, and Transue.
 
 
 11
 On September 25, 1995, all defendants moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Materials outside the pleadings were submitted with a request for the district court to treat the motion as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Accordingly, the district court converted defendants' motion into one for summary judgment. Having reviewed the materials submitted by the parties, the district court determined that two of the affidavits submitted by Schwapp failed to satisfy the requirements of Fed.R.Civ.P. 56(e) and therefore excluded them from its consideration. The court also determined that, out of the twelve incidents alleged, it would consider only the four that had occurred in plaintiff's presence. Having made these initial determinations, the court found that Schwapp failed to establish a triable issue of fact in respect of his federal claims. The court granted summary judgment in favor of defendants on the federal claims and declined jurisdiction over the state law claims that remained. On September 23, 1996, judgment was entered in favor of defendants. This appeal followed.
 
 DISCUSSION
 I. Hostile Work Environment Claim
 
 12
 Schwapp argues that the district court erred in granting summary judgment in favor of defendants, the court having found that the facts, as alleged by Schwapp, failed to establish a triable issue of fact as to the existence of a hostile work environment. In particular, Schwapp alleges that the district court erred in refusing to consider as evidence in support of his complaint two affidavits by former APD police officers, and eight additional racially hostile incidents at the APD. We agree.
 
 
 13
 In reviewing a grant of summary judgment, we apply the same standard as the district court and determine de novo whether summary judgment is appropriate. See Taggart v. Time Inc., 924 F.2d 43, 45-46 (2d Cir.1991). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 106 S.Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986). The moving party has the burden of identifying the evidence that it believes demonstrates the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). In determining whether summary judgment is appropriate, the court resolves all ambiguities and draws all reasonable inferences against the moving party. See Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir.1996).
 
 
 14
 We are particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir.1994); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985). Because direct evidence of an employer's discriminatory intent will rarely be found, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gallo, 22 F.3d at 1224. However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment. See Meiri, 759 F.2d at 998.
 
 
 15
 "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404-05, 91 L.Ed.2d 49 (1986). To prevail on a hostile work environment claim, a plaintiff must demonstrate: "(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir.1996) (quotation omitted).[3] The conduct alleged must be severe and pervasive enough to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993); see Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 444 (7th Cir.1994) ("the conduct in question is to be judged by both an objective and a subjective standard").
 
 
 16
 "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris, 510 U.S. at 23, 114 S.Ct. at 371. As the Supreme Court has stated, " 'mere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." Id. at 21, 114 S.Ct. at 370 (quoting Meritor, 477 U.S. at 67, 106 S.Ct. at 2405-06) (citation omitted; alteration in Harris ). For racist comments, slurs, and jokes to constitute a hostile work environment, there must be "more than a few isolated incidents of racial enmity," Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir.1986), meaning that "[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments," Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir.1994); see Ways v. City of Lincoln, 871 F.2d 750, 754 (8th Cir.1989). Thus, whether racial slurs constitute a hostile work environment typically depends upon "the quantity, frequency, and severity" of those slurs, Vore v. Indiana Bell Tel. Co., 32 F.3d 1161, 1164 (7th Cir.1994), considered "cumulatively in order to obtain a realistic view of the work environment," Doe, 42 F.3d at 444; see Harris, 510 U.S. at 23, 114 S.Ct. at 371.
 
 
 17
 In ruling that Schwapp failed to establish a triable issue of material fact on his claim of a pervasive and continuous atmosphere of racial discrimination, the district court considered only the first four of the twelve incidents and excluded the affidavits of two former APD officers, Jonathan M. Boyko and Richard Hauzinger. The district court appears to have reasoned that because only the first four incidents occurred "in the plaintiff's presence," only those four are relevant to this action. Schwapp v. Town of Avon, No. 3:94CV01532, at 14 (D.Conn. Sept. 20, 1996). The district court's failure to consider the totality of the circumstances in this case, see Harris, 510 U.S. at 23, 114 S.Ct. at 371, including its selective treatment of the evidence in the record, was in error and necessitates reversal.
 
 
 18
 The district court rejected the Boyko and Hauzinger affidavits because it found the affidavits virtually devoid of any specific instances of racially discriminatory conduct based upon personal knowledge, but replete with conclusory allegations of racism and a racially hostile working environment. To satisfy Rule 56(e), affidavits must be based upon "concrete particulars," not conclusory allegations. Meiri, 759 F.2d at 998. To the extent that these affidavits contain bald assertions and legal conclusions--for example, that Howe "was always making racial slurs about minorities," (Boyko Aff. p 7; Hauzinger Aff. p 7), and that Schwapp "was working in a hostile or abusive working environment," (Boyko Aff. p 12; Hauzinger Aff. p 12)--the district court properly refused to rely on them.
 
 
 19
 However, to the extent the district court excluded evidence of two particular incidents adduced in the affidavits, the court erred. As the district court noted, Hauzinger alleged that he was present and heard Howe's statement that he "just dealt with some nigger bitch out of Hartford." (Hauzinger Aff. p 10.) Hauzinger's recounting of this event is based on personal knowledge and is sufficiently particular to satisfy Rule 56(e). Similarly, both Boyko and Hauzinger recounted the "Barkhamsted Express" incident. The district court excluded this evidence because it concluded that it was not relevant to a claim of employment discrimination. That determination was erroneous. As discussed below, Schwapp's awareness that a supervisor in the APD told officers to target minorities for traffic stops could very well be relevant to Schwapp's reasonable perception of a hostile work environment.
 
 
 20
 The district court also erred in failing to consider the eight additional incidents that did not occur in Schwapp's presence. The eight incidents include one racially-hostile comment made prior to Schwapp's employment, five racially-hostile comments made while Schwapp was with the APD, and two comments made during Schwapp's employment that were hostile toward minority groups of which Schwapp is not a member. Each of these eight incidents occurred outside of Schwapp's presence and allegedly was relayed to Schwapp by other APD officers.
 
 
 21
 The Supreme Court has cautioned us to consider the totality of circumstances in cases such as this. See Harris, 510 U.S. at 23, 114 S.Ct. at 371. The mere fact that Schwapp was not present when a racially derogatory comment was made will not render that comment irrelevant to his hostile work environment claim. Just as a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment, see, e.g., Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 673, 675 (7th Cir.1993), the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment, see Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir.1997). Perry was a hostile environment sexual harassment case. There, we found error in the trial court's exclusion of evidence of sexual harassment of other women even though the plaintiff did not witness that harassment. We determined that such conduct, "if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment." Id.
 
 
 22
 Likewise, the incidents relating to other minorities and those occurring before Schwapp's tenure may be of limited probative value, but cannot be ignored on summary judgment. Whether Schwapp was aware of them during his employment, and, more significantly, whether in light of these incidents, the incidents Schwapp experienced more directly "would reasonably be perceived, and [were] perceived, as hostile or abusive," Harris, 510 U.S. at 22, 114 S.Ct. at 371, are factual issues that should be resolved by a trier of fact.
 
 
 23
 In sum, Schwapp has recounted ten racially-hostile incidents of which he allegedly was aware during his 20-month tenure at the APD. He also has recounted two other incidents which reflect bigotry at the APD toward other minority groups. Most importantly, LeMay, Schwapp's supervisor, advised Schwapp that he "had to understand that ... at one time all the crimes in Avon were committed by blacks," and that, while LeMay was aware of the racially-hostile situation, Schwapp had to accept the fact that he was working with racists and not be "so sensitive." (Compl.p 22(f).) This incident weighs heavily against a grant of summary judgment. Resolving ambiguities and drawing inferences in Schwapp's favor, see Cifarelli, 93 F.3d at 51, we cannot say as a matter of law that these incidents could not amount to a claim of a hostile work environment. Therefore, summary judgment was inappropriate in this case.
 
 II. Abandonment of Other Claims
 
 24
 Defendants contend that Schwapp has abandoned all of his claims, except for the hostile work environment claim, by failing to argue against the dismissal of those claims on appeal. Schwapp argues that all of his claims "rise[ ] or fall[ ]" on our determination of the facts underlying his hostile work environment. (Appellant's Br. at 1.) To the extent that Schwapp's other claims do not rely upon proof of a hostile work environment, those claims have been abandoned.
 
 
 25
 Pursuant to Fed. R.App. P. 28(a)(6), an appellant's brief "must contain the contentions of the appellant on the issues presented, and the reasons therefor." We consider abandoned any claims not adequately presented in an appellant's brief. See United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir.1993).
 
 
 26
 Schwapp's only treatment of his other federal claims is set forth in the jurisdictional statement of his brief on appeal, as follows:
 
 
 27
 Plaintiff-appellant appeals the ruling of the district court that granted the judgment on the pleadings for the defendants-appellees on the following claims:
 
 
 28
 a. Title VII--Hostile Work Environment
 
 
 29
 b. 42 U.S.C. § 1983--Equal Protection and Due Process
 
 
 30
 c. 42 U.S.C. § 1981--Right to Contract
 
 
 31
 d. State Law.
 
 
 32
 The factual basis for all of these claims rises or falls on the determination of the hostile work environment facts. The hostile work environment facts support the Title VII, equal protection (race discrimination), due process (constructive discharge), right to contract (race discrimination) and state law tort claims.
 
 
 33
 (Appellant's Br. at 1-2.)
 
 
 34
 Mere referencing of other claims does not constitute an argument on appeal. See Fed. R.App. P. 28(a)(6); Restrepo, 986 F.2d at 1463. Schwapp makes no legal or factual arguments with respect to his several § 1983 and § 1981 claims apart from the excerpt above. To the extent that hostile work environment is an issue in these federal claims, the district court may reconsider those claims. On remand, Schwapp is free to pursue his state claims, over which the district court again will have pendent jurisdiction.
 
 CONCLUSION
 
 35
 Reversed and remanded.
 
 
 
 *
 The Honorable Milton I. Shadur of the United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [1]
 Schwapp alleges in the complaint that his wife is of Puerto Rican ancestry
 
 
 [2]
 While it is unclear, the wording of the complaint and affidavits suggest that this incident occurred prior to Schwapp's arrival. (See Compl. p 22(n); Boyko Aff. p 17; Schwapp Aff. p 21.)
 
 
 [3]
 We note that the district court, having concluded that the evidence was insufficient to raise a triable issue as to the first requirement for establishing a claim, never considered the Town of Avon's liability for the defendants' conduct