**Alvin D. SCHWAPP, Jr., Plaintiff,**

v.

**THE TOWN OF AVON; Thomas A. Transue; Harold T. Lemay, Jr.; and Steven A. Howe, Defendants.**

**No. 3:94 CV 1532(GLG).**

United States District Court,
D. Connecticut.

Nov. 27, 1998.

M. Hatcher Norris, Butler, Norris & Gold, Hartford, CT, Ralph E. Wilson, Middletown, CT, for Alvin D. Schwapp, Jr.

Robert C. Hunt, Pepe & Hazard, Hartford, CT, Scott M. Karsten, Sack, Spector & Barrett, West Hartford, CT, for Town of Avon.

Scott M. Karsten, Sack, Spector & Barrett, West Hartford, CT, for Philip K. Schenck, Paul A. Olson, James A. Martino, Jr., Richard W. Hines, William Shea, II, S. Edward Jeter, Joseph C. Woodford, Beatrice Murdock France and Modesto F. Brunoli.

James A. Wade, Daniel F. Sullivan, Robinson & Cole, Hartford, CT, Scott Karsten, Sack, Spector & Barrett, West Hartford, CT, for Thomas A. Transue.

Kevin D. O'Leary, Eric Watt Wiechmann, Peter W. Hull, Cummings & Lockwood, Hartford, CT, Scott M. Karsten, Sack, Spector & Barrett, West Hartford, CT, for Harold T. Lemay.

Hubert J. Santos, Hope C. Seeley, Santos & Seeley, Hartford, CT, Scott M. Karsten, Sack, Spector & Barrett, West Hartford, CT, Susan K. Smith, Hartford, CT, for Steven A. Howe.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Following an adverse jury verdict, the plaintiff moves for a new trial contending that the jury charge contained reversible error with respect to his employment discrimination claim against the Town of Avon.

The plaintiff, who is African–American, was employed as a police officer in the Town of Avon, Connecticut, for approximately two years, starting in February of 1992 and ending in February of 1994. The Town of Avon had approximately thirty police officers. Plaintiff was the first African–American on the force.[1]

The essential claim put forth by the plaintiff is that, during the period of his employment, he was subjected to a racially harassing work environment, that the supervisory defendants knew, or should have known, of the situation and failed to take appropriate remedial action. Additionally, the plaintiff asserted claims of intentional infliction of emotional distress against the three individual police officers.[2]

More than a year ago, when the case was pending before Chief Judge Covello, the defendants filed a motion for summary judgment. Chief Judge Covello granted summary judgment in defendants' favor, finding that the four purported derogatory racial remarks made in the plaintiff's presence were not enough to establish an actionable claim of hostile work environment. The Court of Appeals reversed the grant of summary judgment and remanded, finding that there were eight additional instances of racially hostile conduct that occurred outside of plaintiff's presence, which were reported to him, and which should have been considered by the Court on summary judgment in determining whether a hostile work environment existed. *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir.1997). These additional eight incidents included two remarks involving other minority groups of which the plaintiff was not a member, and one or more that took place prior to plaintiff's commencing his employment with the Avon police department. The Court conceded that the eight other incidents might be of limited probative value but held that they could not be ignored at the summary judgment stage. *Id.* at 111–12.

■ The portion of the jury charge to which the plaintiff takes exception is:

Thus, to prevail on a hostile work environment claim, the plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule and insult that was directed toward him and sufficiently severe or pervasive to alter the conditions of his employment.[3]

Plaintiff claims that it was error to charge the jury that they must find that the discriminatory intimidation, ridicule and insult was directed toward the plaintiff. Pl.'s Mem. at 2.

We believe the charge, when viewed in its entirety, correctly stated the law. As the Second Circuit held last year in *Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir.1997):

"one of the critical inquiries in a hostile environment claim must be the *environ-*

---

1. Plaintiff was hired as part of an apparent "diversity" program of the Town. The two other officers hired were an Hispanic and a woman. The "Hispanic" was not so by birth but had been adopted by an Hispanic family. The woman was not the first hired by the Avon police force but there were no other women at the time. The other two new hires did extremely well and are now sergeants.

2. The jury found in favor of the individual defendants on all of these claims.

3. We note, in passing, that events "directed toward" plaintiff are not limited to those which occurred in plaintiff's presence, provided that when relayed to him in any manner they altered the conditions of his employment.

*ment.* Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim."

*Id.* at 149 (quoting *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987)(emphasis in original)).

Plaintiff, however, interprets the Second Circuit's decision in *Schwapp* as creating new law by relying upon eight events which occurred outside the plaintiff's presence, as a basis for reversing Chief Judge Covello's granting of summary judgment.

We must stop now to note how these other incidents came to plaintiff's attention. As the evidence made clear, there was a certain degree of divisiveness among the Town of Avon police officers. A number of the white male officers resented their supervisors and management who had on occasions administered suspensions to some of them. These officers identified with the plaintiff and were considered his "support group." They reported to him every instance of what could be considered racial remarks made by supervisory officers, including some that went back a great number of years and others which involved minorities other than blacks. The plaintiff collected these reported items and relied upon them to prove a hostile work environment, even though they had not been directed toward him and did not directly affect the conditions of his employment. (Indeed, some of the events were reported to him only after he had filed his charge of discrimination with the Equal Employment Opportunity Commission).

As for the four purportedly hostile racial remarks made in the plaintiff's presence, the uncontradicted evidence at trial revealed that none of these were intended as insults toward the plaintiff. Indeed, only one was an overtly hostile appellation. A police officer had been called to a shopping center by citizens who observed a black woman striking her child in a car. After returning from that call, which had apparently been a contentious event, the officer (defendant Howe) in speaking to a third officer in the plaintiff's presence, made reference to his experience with "the nigger bitch." The other three events which occurred in the plaintiff's presence were racial only by interpretation. For example, one was a long joke which until its end had no racial connotation, but apparently the final word was "naggar." [4] The plaintiff maintained that this was a play on the word "nigger." The sergeant who transmitted the joke to him said that it referred to the wife in the joke as being a nagger. [5] As to another incident involving Lieutenant LeMay (also a defendant), he denied having said, as plaintiff claimed, that "at one time all the crimes in Avon were committed by blacks" [6] and testified that he said that most of the Avon police officers' contacts with blacks were in "confrontational" situations (*e.g.,* serving traffic summons) which may have shaped some policemen's attitudes.

Consistent with the Second Circuit's decision on the summary judgment reversal, we told the jury at the start of the case, during the case, and in our charge that they *could* consider the remarks reported to the plaintiff (but not made in his presence) in determining whether there was a hostile work environment, the perceptions of the plaintiff, and the intentions of the defendants, but that they could not award the plaintiff damages for matters that occurred outside of his presence unless the matters were intended to be conveyed to the plaintiff or unless they affected his work environment. Indeed, in a portion of the charge given almost immediately after the portion to which plaintiff objects, we instructed the jury as follows:

As I have told you a couple of times, you can consider the acts and statements of plaintiff's superiors which were merely re-

---

**4.** While the joke was written it was not retained by anybody. Consequently the jury had to rely upon various witnesses' reconstructions of the joke, including the spelling of the word "naggar."

**5.** If so, it was misspelled. A "naggar" is defined as a cargo boat used on the upper Nile river.

Webster's *Third New International Dictionary,* (1971).

**6.** This would have been an unlikely thing to say considering that Avon has only a minute percentage of blacks in its population.

layed to him in determining the work environment and the perception of plaintiff and the intentions of the defendants, but from the standpoint of damages sustained by the plaintiff you must consider only those things said in his presence or intended to be conveyed to him or which affected his work environment.

Jury instructions are considered in their entirety. *United States v. Walker*, 142 F.3d 103, 111 (2d Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 219, 142 L.Ed.2d 181 (1998). A party challenging a jury instruction must show that the purported error "was prejudicial in light of the charge as a whole." *Perry*, 115 F.3d at 153.

It is implicit in the plaintiff's position that, if there is evidence of a hostile racial work environment directed against any group, he is entitled to be awarded damages even though he was not personally subjected to it. Plaintiff argues that his personal experiences include "conduct occurring in the work place the existence of which is brought to his attention." Pl.'s Reply Mem. at 4–5.

We do not read the Second Circuit's opinion in *Schwapp* as effectuating such a significant change in the law. Indeed, the Second Circuit has recently upheld the grant of summary judgment in favor a defendant-employer in a case where the plaintiff was unable to prove that she was subjected to abuse of sufficient severity or pervasiveness as to alter the conditions of her employment. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768, No. 97–9045, 1998 WL 770704, at *7 (2d Cir. Nov.5, 1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). To accept plaintiff's position would allow an individual to seek employment with an organization which he or she believed had an environment hostile to his or her race, gender, etc., collect the information provided by others, and then sue for damages even though he or she was not directly impacted by these other events. There is nothing in the Second Circuit's opinion to indicate that it intended to go that far. Indeed, the thrust of its earlier decision in

*Schwapp* was directed primarily at the granting of summary judgment in employment discrimination cases. The Court stated:

> We are particularly cautious about granting summary judgment to an employee in a discrimination case where the employer's intent is in question.

*Id.* at 110 (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994), and *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)); *see also Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir.1998).[7] Elsewhere in the opinion the Court held that to prevail on a hostile work environment claim:

> a plaintiff must demonstrate: "(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment" ...

*Id.* (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996)). The Court further stated that:

> For racist comments, slurs, and jokes to constitute a hostile work environment, there must be "more than a few isolated incidents of racial enmity," ... meaning that "[i]nstead of sporadic racial slurs, there must be a steady barrage[8] of opprobrious racial comments." ... Thus, whether racial slurs constitute a hostile work environment typically depends upon "the quantity, frequency, and severity" of those slurs, ... considered "cumulatively in order to obtain a realistic view of the work environment."

*Id.* at 110–11 (citations omitted). Finally, the Court held:

> Likewise, the incidents relating to other minorities and those occurring before Schwapp's tenure may be of limited probative value but cannot be ignored on summary judgment. Whether Schwapp was aware of them during his employment, and more significantly, whether in light of these incidents, the incidents Schwapp experienced more directly "would reasonably

---

7. As we have noted in earlier decisions, the employer's intent is involved in most employment discrimination claims.

8. The use of the word "barrage" connotes comments heard by the plaintiff.

be perceived, and [were] perceived, as hostile or abusive," ... are factual issues that should be resolved by a trier of fact.

*Id.* at 112 (citations omitted).

Nowhere in the decision is there an indication that the plaintiff should be entitled to damages for those events that he was not personally subjected to and that did not alter the conditions of his employment. The plaintiff confuses the question of the admissibility of evidence with the defendant's substantive liability to the plaintiff.

Therefore, the charge, taken in its entirety, correctly states the law of this Circuit with respect to cases such as the plaintiff's. Consequently, the motion for a new trial (Doc. No. 116) is in all respects DENIED.