Gail J. SEGARRA, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. 97 CV 6015.

United States District Court,
E.D. New York.

July 28, 1999.

Robert, Lerner & Robert, Kings Park, New York City, for the plaintiff, by Steven P. Lerner, of counsel.

Zachary W. Carter, United States Attorney, E.D.N.Y., Brooklyn, New York City, for the defendant, by David L. Goldberg, Assistant United States Attorney.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Gail P. Segarra ("Segarra" or the "plaintiff"), commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final administrative determination of the Commissioner of the Social Security Administration (the "Commissioner" or the "defendant") denying her application for social security disability insurance benefits. Presently before the Court is the defendant's motion for judgment on the pleadings as well as the plaintiff's cross-motion for judgment on the pleadings, both pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ("Fed.R.Civ.P."). The issues for the Court to resolve are: (1) whether the Commissioner's denial of disability benefits was supported by substantial evidence; and (2) whether additional medical evidence proffered by the plaintiff after her initial hearing justifies remanding the case to the Commissioner for reconsideration.

## I. BACKGROUND

### A. Procedural History

Segarra first filed an application for social security disability benefits on December 29, 1994. Her application was denied initially on June 9, 1995, and on reconsideration on November 30, 1995. Segarra then filed a timely request for a hearing, which was held on September 19, 1996. On October 9, 1996, after examining the relevant medical history and Segarra's educational background, Administrative Law Judge Daniel J. Slattery (the "ALJ") held that Segarra was not entitled to disability benefits. Specifically, the ALJ held that although the claimant was impaired by degenerative disc disease and depression, she did not have an impairment that necessitated a finding that she was disabled under the Act and the relevant regulations. Furthermore, the ALJ held that the claimant's complaints of back and right leg pain and significant limitation of function were not supported by the objective medical evidence. Finally, the ALJ found that while the claimant cannot perform heavy lifting and carrying due to her back impairment and that she should avoid highly stressful jobs because of her depression, she remains capable of performing sedentary, light and medium work.

The ALJ's decision became the final decision of the Commissioner when, on August 30, 1997, the Appeals Council denied Segarra's request for review. This appeal followed.

B. *Factual Background*

Segarra, who is presently 53 years of age, alleges that she has been disabled since July 26, 1994 due to a back disorder and depression. Segarra is a high school graduate and attended one year of vocational training at Suburban Technical School for the job of medical assistant. Segarra has worked at various jobs since 1988. From January 1988 through June 1990, Segarra worked as a salesperson for a flooring company. As a salesperson, she was did typing and handled cash sales. From May 1991 through May 1993, Segarra worked at a bank as a customer assistant, where she greeted bank customers, assisted in opening new accounts and prepared reports and typewritten letters. From June 1994 through July 1994, Segarra worked as a medical assistant in a doctor's office, where she greeted and escorted patients to the examination rooms, weighed patients, tested patients' urine, did EKG's, assisted with x-rays and carried blood samples. Finally, from October 1994 until November 1995, Segarra worked at a doctor's office as a medical receptionist, where she answered the telephone, scheduled appointments, greeted patients, accepted payments and pulled and retrieved medical files. Segarra claims that she has been forced to stop working because of pain related to a back disorder.

Segarra's medical history dates back to 1982. On January 3, 1982, Segarra was admitted to Nassau Hospital due to a complaint of back pain and increasing pain and radiation in her right lower leg. X-rays revealed a mild scoliosis of the lumbosacral spine. She was diagnosed with lower back syndrome and right sciatic radiculitis.

On November 3, 1994, Segarra was admitted to Hillside Hospital's locked unit following a suicide attempt by prescription drug overdose. The hospital diagnoses at discharge were adjustment reaction with depressed mood, borderline personality disorder, hypothyroidism, spindylolisthesis, and discogenic discs. Segarra was discharged from the hospital after an eleven day stay. Segarra claims that she continues to see a psychologist approximately once a month and takes Pamelor for depression.

On January 26, 1995, at the request of Segarra's chiropractor, x-rays were taken by Dr. Robert S. Nuba. A review of the x-rays by Dr. Nuba revealed degenerative and discogenic changes in the cervical spine. Similar changes were noted in the lumbar spine. The x-rays did not evidence any bony abnormalities in the pelvic region.

On April 3, 1995, Segarra was seen by Dr. H. Reddy at St. John's Episcopal Hospital. Dr. Reddy made a diagnosis of a major depression in remission and advised continuation of anti-depressant medication.

On May 4, 1995, Dr. Sznajder performed a consultative examination on Segarra at the request of the ALJ. His physical examination revealed mild scoliosis, painful rotation and bending of the neck in the extreme ranges but no limitations, and no tenderness of the lower back but very positive pain at the right sciatic notch. Dr. Sznajder's impressions of the plaintiff's medical condition were status post chronic cervical and low back pain with possible sciatic involvement on the right, history of thyroid disease; and early menopausal and depression. He also noted that x-rays taken in January 1995 showed a marked scoliosis with degenerative disease affecting the "LS vertebra." Importantly, Dr. Sznajder also noted that Segarra was able to perform all but heavy duties without assistance.

Two Social Security Medical Consultants, reporting in separate Social Security medical assessments dated June 6, 1995 and November 27, 1995, found that Segar-

ra could lift 20 pounds occasionally and 10 pounds frequently, that she could stand and/or walk and sit for 6 hours in an 8 hour work day and she had unlimited push and/or pull abilities.

A report by the plaintiff's treating physician, Dr. Peter Ajemian, dated September 29, 1995, provided a diagnosis of degenerative disc disease of C5 to C7 and L4 to S1. Dr Ajemian diagnosed Segarra with mild scoliosis and noted that her left leg was ½ inch shorter than her right leg. In Dr. Ajemian's opinion, the plaintiff's ability to lift and carry was limited to five pounds; she was limited to two hours of standing and/or walking per day; she was limited to less than six hours of sitting per day; and that her ability to push and pull was limited.

### C. *The Hearing*

Segarra appeared with counsel before the ALJ on September 19, 1996. At the time of the hearing, the plaintiff claimed to be under the care of a psychologist and was taking Pamelor for depression. She also claimed to be seeing an acupuncturist for the pain caused by her back problems, which she stated helped to a great extent. Segarra testified that she lived alone. She stated that she had pain across her lower back that radiated down her right leg, as well as in her neck and down her left arm. Segarra claimed that she could only sit for an hour before the pain in her back would force her to have to lay flat for an hour; that she could stand for 30 minutes to an hour; and that she could walk for 15 to 20 minutes. She also testified that she had to leave her last two places of employment after only a short time because of the pain in her back. In addition, Segarra testified that she walks on the boardwalk for 20 minutes in nice weather and that she visits friends on a regular basis. Furthermore, she had just volunteered to become a "Big Sister." Segarra submits that she was entitled to disability benefits from July 26, 1994, the date she claims to have become disabled.

### D. *The ALJ's Decision*

On October 9, 1996, the ALJ issued a written decision denying Segarra's application for benefits, concluding that "the claimant was not disabled under Title II of the Social Security Act at any time throughout the date of this decision." The ALJ found that Segarra was able to perform all but heavy work, thus, remaining able to perform sedentary, light and medium work. Specifically, the ALJ held that the claimant "has been impaired by degenerative disc disorder of lumbosacral spine and depression but, she does not have an impairment or combination of impairments which meet or medically equal in severity the requirements of any impairment listed in Appendix 1 to Subpart P, Pat 404 of the regulations." In addition, the ALJ found Segarra's complaints of back and right leg pain and significant limitation of function to be unsupported by the medical evidence.

Segarra appealed, and on August 30, 1997, the Appeals Council denied her request for review. The central issue before this Court, therefore, is whether the Commissioner's decision, affirmed by the ALJ and the Appeals Council, that Segarra was not disabled between July 26, 1994 and October 9, 1996, is supported by substantial evidence. In addition, the Court will consider whether additional medical evidence of evaluations by her treating physician performed both prior to and after her hearing, proffered by the plaintiff after her hearing, justifies remanding her case to the Commissioner for reconsideration.

## II. DISCUSSION

### A. *Standard for Rule 12(c) Motion for Judgment on the Pleadings*

Under Rule 12(c) of the Fed.R.Civ.P. the Court must apply the same standard of review as applicable to a motion to dismiss under Rule 12(b)(6). *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994); *S.O. Textiles v. A & E Products Group*, 18

F.Supp.2d 232, 238 (E.D.N.Y.1998). Under this test "the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard*, 18 F.3d at 150 (quoting *Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 [2d Cir.1987] ) (citations omitted).

**B. Scope of District Court's Review of ALJ's Findings**

■ Judicial Review of an ALJ's ruling denying Social Security benefits is limited. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir.1998). In examining the ALJ's decision "it is not the [Court's] function to determine de novo whether the [plaintiff] is disabled". *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 [2d Cir.1996] ) (internal quotation marks omitted). Rather, the district court must "review the Commissioner's decisions to determine whether they are supported by substantial evidence." *Snell v. Apfel*, 97 CV 6240, 177 F.3d 128, 1999 WL 317491, *4 (2d Cir. May 20, 1999) (citing 42 U.S.C. § 405[g] [1994]; *Rivera v. Sullivan*, 923 F.2d 964, 967 [2d Cir.1991] ). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Snell*, 177 F.3d 128, 132 (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 [1971] ). Substantial evidence is more than a mere scintilla. *Schaal*, 134 F.3d at 501 (quoting *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420 [1971]) (citations omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

■ Where the findings are supported by adequate evidence "the Court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991). The determinations of the Commissioner will be conclusive if supported by substantial evidence and where there is no legal error. 42 U.S.C. § 405(g); *Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir.1981); *Smith v. Shalala*, 856 F.Supp. 118, 121 (E.D.N.Y.1994). Finally, the ALJ has an affirmative obligation to develop the administrative record even when the claimant is represented by counsel. *Schaal*, 134 F.3d at 505.

**C. Qualifying for Social Security Disability Benefits Under the Social Security Act**

In order to qualify for disability benefits, "an individual must be unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than 12 months.' " *Brown v. Apfel*, 174 F.3d 59, 62–63 (2d Cir.1999) (quoting 42 U.S.C. § 423[d][1][A] [1994] ). The claimant is disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

In evaluating a claimant's disability, the Federal Regulations provide a detailed five-step analysis that has been summarized by the Second Circuit as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the

claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

*DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir.1998) (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 [2d Cir. 1982] ); *see also Balsamo v. Chater,* 142 F.3d 75, 79–80 (2d Cir.1998); *Schaal,* 134 F.3d at 501.

■ To meet the burden of proof required by step five, the Commissioner may rely on the medical vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the grids":

The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the grids indicate whether the claimant can engage in any other substantial gainful work, which exists in the national economy. Generally the result listed in the grids is dispositive on the issue of disability. However, the grids are not dispositive where they do not accurately represent a claimant's limitations that significantly diminish her capacity to work.

*SeeRodriguez v. Apfel,* 96 Civ. 8330, 1998 WL 150981, at *7 (S.D.N.Y. March 31, 1998) (citations omitted). There are five levels of exertions, which are derived from the grid, namely, sedentary, light, medium, heavy and very heavy. These criteria are used to determine what level of exertion a claimant is capable of performing in an occupational setting.

The Second Circuit has stated that the Commissioner must consider the following four factors when making a determination as to whether a claimant is disabled:

(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.

*Brown,* 174 F.3d at 62 (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1037 [2d Cir. 1983] [Per Curiam] ).

**D.** *As to the Decision by the ALJ Denying Benefits*

■ In the instant case, the ALJ performed the above five-part analysis. First, the ALJ found that Segarra has not been engaged in substantial gainful activity since July 16, 1994. Next, the ALJ concluded that Segarra is impaired by degenerative disc disorder of lumbosacral spine and depression but that she does not have an impairment or combination of impairments which meet or medically equal in severity the requirements of any impairment listed in Appendix 1 to Subpart P, Pat 404 of the regulations. The ALJ then concluded that the claimant's testimony concerning her condition and limitations was not supported by objective medical evidence of an impairment of such severity as would be expected to result in what was alleged and was inconsistent with her statements regarding her daily activities. The ALJ also held that the claimant remains capable of performing sedentary, light and medium work as defined in SSR

83-10 and of responding appropriately to stress in a routine work environment.

The ALJ noted that the findings of Dr. Ajemian, Segarra's treating physician of only two months, were based on an assessment of a neck impairment, which the claimant did not complain of previously or subsequently. He further found that Dr. Ajemian's assessment was not supported by medically acceptable clinical and labatory techniques and was contradicted by substantial medical evidence. The ALJ also reviewed the report of Dr. Sznajder's consultative examination, performed at the réquest of the Administration on May 1995, which indicated that Segarra was able to perform all but heavy duties and found the results of the January 1995 MRI to be essentially unremarkable.

Segarra contends that the decision of the ALJ is not supported by substantial evidence in that the ALJ did not give proper consideration to the opinion of the plaintiff's attending physician nor to the plaintiff's subjective and objective findings. Segarra further argues that Dr. Ajemian's pre and post hearing examinations that were not part of the original record of the plaintiff constitute new and material evidence that should be made part of the administrative record warranting a finding by this Court of disability or in the alternative, requiring a remand for a new administrative hearing.

■ It is well-settled that the expert opinion of a treating physician is entitled to great weight, *Balsamo v. Chater*, 142 F.3d 75 (2d Cir.1998), and is binding on the fact finder unless contradicted by substantial evidence. *Id.; see also Murdaugh v. Secretary of Dep't of Health and Human Servs.*, 837 F.2d 99 (2d Cir.1988). The Second Circuit has recently stated that:

> [t]he method by which the Social Security Administration is supposed to weigh medical opinions is set forth at 20 C.F.R. § 404.1527(d). The regulations say that a treating physician's report is generally given more weight than other reports

and that a treating physician's opinion will be controlling if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record."

*Snell*, 177 F.3d 128, 132 (quoting 20 C.F.R. § 404.1527[d][2] ). In addition, the Code of Federal Regulations mandates that greater weight be given to the treating sources because they are most able to provide a detailed picture of medical impairments and bring a unique perspective to the medical evidence. 20 C.F.R. § 404.1527(d)(2). The Second Circuit in *Snell* added that:

> [w]hen other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given. Moreover, some kinds of findings-including the ultimate finding of whether a claimant is disabled and cannot work-are reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative.

*Snell*, 177 F.3d 128, 132 (quotations omitted).

While the Court acknowledges that a treating physician's opinion will be controlling if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record," *Snell*, 177 F.3d 128, 132 (quoting 20 C.F.R. § 404.1527[d][2] ), the Court is mindful that "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion ... that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Id.*

While the Court agrees with the plaintiff that Dr. Ajemian's findings were not con-

tradicted by the findings of Dr. Sznajder, as both physicians found that Segarra suffered from degenerative disc disease and mild scoliosis, the Court finds that Dr. Ajemian's findings were not determinative. The ALJ considered the plaintiff's diagnosis and found no impairment within the guidelines set forth by 20 C.F.R. §§ 404.1520(c), (d). It was Dr. Ajemian's opinion that the plaintiff's abilities to perform work related physical activities are limited. Dr. Ajemian did not find that Segarra was completely disabled. As such, his findings were not inconsistent with the ALJ's finding that Segarra remained capable of sedentary, light and medium work. Furthermore, Dr. Ajemian's conclusions were undermined by the brevity of his two-month treatment relationship and by the diagnostic and clinical findings of the two reports dated June 6, 1995 and November 27, 1995, which indicated that Segarra could lift 20 pounds occasionally and 10 pounds frequently, that she could stand and/or walk and sit for 6 hours in an 8 hour day and that she had unlimited push and/or pull abilities. In addition, a January 16, 1995 MRI of the lumbosacral spine of Segarra was essentially unremarkable. Finally, Dr. Sznajder's May 4, 1995 physical examination revealed that Segarra was able to perform all but heavy duties. As a result of these findings, the Court finds that the Commissioner's denial of disability benefits was supported by substantial evidence.

### E. *As to the Plaintiff's Additional Medical Evidence*

■ "The court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is no good cause for the failure to incorporate such evidence into the record in the prior proceeding...." 42 U.S.C. § 405(g) (1988). The Second Circuit has summarized this "three-part showing" as follows:

An appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

*Lisa v. Secretary of Health and Human Servs.*, 940 F.2d 40, 43 (2nd Cir.1991) (internal quotations and citations omitted).

■ Segarra offers two reports from Dr. Ajemian dated July 18, 1995 and September 19, 1995, an EMG report dated September 20, 1995 and a MRI report dated September 21, 1995. These four reports pre-date the ALJ's decision and yet the plaintiff offers no reason whatsoever for not including them as evidence in the prior hearing before the ALJ. The Court denies the plaintiff's request to add the pre-dated reports to her record as she has failed to give "good cause" for not producing and presenting the evidence at the time of her hearing.

■ Segarra further offers three reports from Dr. Ajemian that post date the ALJ hearing. According to the plaintiff, the post dated evidence reveals a recommended urgent neurosurgical consultation on January 5, 1997. The Plaintiff also notes that in a report dated April 22, 1997, Dr. Ajemian wrote that, "[t]he patient's discomfort and pain is persistent and chronic, if not slowly progressive, transfers up and down from stairs arising from a chair, getting in and out of a car have also precluded and cause, night pain that awakened her from her sleep. The patient also has a nearly½ inch leg length inequality with associated pelvic obliquity...." Dr. Ajemian's April 22, 1997 further states that an updated x-ray of Segarra reveals that her multiple disc problems were un-

**34**

changed. Finally, Segarra alleges that Dr. Ajemian evaluated an October 21, 1997 MRI of her thoracic spine in a report dated November 5, 1997. According to the plaintiff, Dr. Ajemian found a T8–9 disc herniation, scoliosis of the thoracic spine and multiple levels of discogenic disease in her lumbar spine.

The Court finds that these post-date reports satisfy the requirements set-forth in *Lisa v. Secretary of Health and Human Servs., supra.* It appears that the post dated evidence is not merely cumulative and is material. In addition, as these reports post-date the findings of the ALJ, the Court finds that good cause exists for her failure to present this evidence. Therefore, the Court remands this case so that the Commissioner may consider the post dated evidence and determine whether it warrants a conclusion that Segarra was disabled within the relevant time period for which she was insured.

In sum, the Court finds that the ALJ's findings and conclusion that Segarra retained the residual functional capacity to perform sedentary, light and medium work between July 26, 1994 and October 9, 1996 was supported by substantial evidence and was determined without legal error. Further, Segarra's request that the new evidence discussed above warrants remand, is granted.

### III. CONCLUSION

Having reviewed the submissions of the parties and the findings by the Commissioner, the ALJ, and the Appeals Council, and for the reasons set forth above, it is hereby

**ORDERED,** that the plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is **DENIED;** and it is further

**ORDERED,** that the plaintiff's request to remand her case for a new administrative hearing based on new medical evidence, is **GRANTED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**