Cori TAVARES, Plaintiff,

v.

SAM'S CLUB and Wal–Mart Stores, Inc., Defendants.

No. 3:00CV0133 (RNC).

United States District Court, D. Connecticut.

Sept. 21, 2001.

Caleb McIvor Pilgrim, New Haven, CT, for plaintiff.

Gregory B. Reilly, Patricia A. LeGoff, Greble & Finger, New York City, Robert L. Cavanaugh, Jr., Goldstein & Peck, Bridgeport, CT, for defendant.

## RULING AND ORDER

CHATIGNY, District Judge.

Plaintiff brings this case against her former employer claiming race discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* She also asserts state law claims of constructive discharge, intentional infliction of emotional distress and breach of contract. Defendants have moved for summary judgment on all the claims in the complaint. The motion is properly supported by a Local Rule 9(c)(1) statement, deposition testimony, and affi-

davits. Plaintiff's opposition papers, which do not include a Local Rule 9(c)(2) statement, fail to show the existence of a genuine issue of material fact requiring a trial. Having carefully considered the matter, I conclude that the defendants are entitled to judgment as a matter of law on all the claims in the complaint. Accordingly, the motion is granted in full.

*FACTS*

The facts set forth in defendants' Local Rule 9(c)(1) statement are deemed admitted. D.Conn.L.Civ.R. 9(c)(1) ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 9(c)(2)."). Plaintiff's opposition memorandum contains certain conclusory statements of fact, unsupported by citation to evidence, that have been refuted by defendants in their reply memorandum. Defs.' Reply Mem. at 3–4. Accordingly, there are no disputed issues of material fact requiring resolution by a jury.

The facts are as follows. Plaintiff, an African American, was employed at Sam's Club in Orange, Connecticut, from March 1995 until March 1996. Brian Weed was the general manager of the store from September 1995 through the date of plaintiff's termination. Plaintiff was hired as a cashier but was transferred in the fall of 1995 to a full-time position in the "center section" of the store. The transfer was approved by Weed.

When plaintiff began her employment, she received an employee handbook. The handbook notified her that profanity is prohibited in the workplace. The handbook also explained defendants' reliance on a "coaching" system to issue verbal and then written warnings to employees who disregard workplace rules. These coachings are deemed "active" for a 12–month period after they are issued. Under the guidelines stated in defendant's handbook, "an associate under active Coaching for Improvement may not be transferred or promoted to another position until satisfactory performance is demonstrated and the performance coaching level expires." Doc. 48, Ex. 3 at 8.

In October 1995, plaintiff received a written and verbal coaching for insubordination after she yelled an obscenity at her supervisor. She received another coaching, this time for tardiness, in November 1995.

In March 1996, while these coachings were still active, plaintiff applied for a position as a claims clerk. One of the requirements of the position is the ability to interact well with outside vendors and Wal–Mart management. The position also requires someone with an even temper.

Plaintiff discussed her interest in the position with Weed. According to her deposition testimony, he told her that he thought she was the best person for the position but had to interview other applicants in fairness to them and in accordance with company policy. It is undisputed that Weed could not enter into any employment agreement or contract with the plaintiff and never told her that she got the job. *See* Local Rule 9(c)(1) Statement, ¶¶ 22, 23.

On March 14, 1996, a meeting was held to decide who should get the position of claims clerk. Another employee, Janet Sherman, who is Caucasian, had also applied. Weed and his managers agreed that Sherman was more qualified for the job than the plaintiff. Sherman was regarded as level-headed, she reported having prior work experience as a claims associate at J.C. Penney, and she had no active coachings in her file. Plaintiff, in contrast, was perceived as lacking the necessary temperament for the position, she had two active coachings in her file (one for insub-

ordination) and no prior work experience in claims. Accordingly, the job was offered to Sherman.

Upon learning that she had not been chosen for the job, plaintiff became very angry and yelled and cursed at Weed. Weed responded by telling her to hand over her badge. She refused, telling him, "No. You want it that bad, take it." She then got on a forklift and rode through the store breaking and disarranging merchandise. The police were called and plaintiff was arrested. She pled guilty to charges of breach of peace, criminal mischief and reckless endangerment and her employment was terminated for destruction of company property.

## DISCUSSION

### Title VII Claims

#### Wrongful Termination

■ Plaintiff cannot make out a claim of wrongful termination based on race because she has clearly and unequivocally admitted in her deposition testimony that defendants had a right to terminate her employment for unprofessional conduct. Doc. 50, Ex. B at 258–59.

#### Failure To Promote[1]

■ In order to establish a prima facie case of failure to promote, plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir.2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). This burden is "not onerous." *Id.* (citing *Texas Depart-*

*ment of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Once this burden is met, the employer must disclose a legitimate, nondiscriminatory reason for its decision. *Id.* The plaintiff must then produce "admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is a pretext for an impermissible motivation." *Id.* In some instances, proof of falsity of the employer's stated reason may suffice to permit an inference of discriminatory motivation. *James v. New York Racing Assoc.*, 233 F.3d 149, 154–57 (2d Cir.2000).

■ Defendant argues that plaintiff cannot establish a prima facie case because she cannot demonstrate that she was qualified for the claims clerk position. I disagree. The record, construed most favorably to her, permits an inference that she was qualified. She has testified that when she met with Weed in connection with her interest in the position, he told her he believed her to be "the best person for the position." See Doc. 50, Ex. B at 400. In addition, she has testified that in anticipation of getting the job, she used her break time to learn the duties of the job by shadowing a claims clerk who was leaving. *Id.* at 186–87.

■ Because plaintiff has established a prima facie case, she is entitled to a presumption of discrimination unless defendants articulate specific, nondiscriminatory reasons for the challenged decision. Defendants state that the decision to give Sherman the position was based on her superior qualifications, specifically her past claims experience, and the fact that she had no active coachings in her personnel

---

**1.** The parties dispute whether the move to claims clerk was actually a promotion for plaintiff or merely a lateral transfer. For purposes of this ruling, I have assumed without deciding that the move would have been a promotion.

file. Defendants further state that plaintiff's past record of insubordination indicated that she did not have the even temperament needed for the position, which required the successful candidate to interact well with outside vendors and Wal-Mart management concerning damaged and defective merchandise. These reasons plainly suffice to meet the employer's burden.

In order to survive summary judgment, then, plaintiff must offer evidence from which a reasonable jury could conclude that defendants' explanation is merely a pretext for discrimination. Plaintiff alleges that defendants' explanation is false, yet admits that she had active coachings in her file at the time she applied for the position, which would have prevented her from being promoted under the guidelines in defendants' handbook.

Plaintiff asserts that Sherman also had coachings. However, the sole basis for this assertion is that she heard Sherman's supervisor state at some point that she would have to give Sherman a coaching for a "no show" or "no call." Plaintiff admits that she never actually saw Sherman's personnel file. Defendants' current personnel manager, Mark Abalan, has signed an affidavit stating that his review of Sherman's personnel file and the inactive file "confirm that Ms. Sherman did not have any coachings prior to her attaining the claims clerk position in March 1996." Doc. 49 at 2 (Abalan Aff.).[2]

Plaintiff does not contend that the prohibition on transfer of employees with active coachings was selectively enforced. *Cf. Howley,* 217 F.3d at 151 (plaintiff met prima facie case for discriminatory failure to promote by providing evidence that several male applicants who, like her, did not have four years of required experience were not similarly disqualified for promotion on that basis); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 568 (2d Cir. 2000) (Hispanic plaintiff failed to establish discriminatory termination because she failed to produce evidence that non-Hispanic employees who engaged in similar violation of rules escaped termination). Nor does she contend that defendants discriminated in giving out coachings.

Plaintiff has testified that Weed discriminated against black employees by refusing to select them as "employee of the month." However, she offers no evidence to support her conclusory statement. Her unsupported assertion that Weed was not even-handed in selecting the "employee of the month" does not support a reasonable inference that he more likely than not denied her the position of claims clerk because of her race.

*Hostile Environment*

 Plaintiff's hostile work environment claim is based on two racist remarks allegedly made by Joe Bruno, the overnight supervisor.[3] In order to establish a prima facie case of hostile work environment, plaintiff must show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the [her] employment and create an abusive working environment." *Howley,* 217 F.3d at 153 (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *Cruz,*

---

**2.** Plaintiff has moved to strike the affidavit but I fail to see why it should be stricken. In his current capacity, Abalan maintains and is familiar with the defendants' personnel records, which are admissible under the business records exception to the hearsay rule.

**3.** Defendants argue with some justification that this claim has been abandoned but I address it in the interest of the policy favoring resolution of claims on the merits.

202 F.3d at 570. There is no threshold number of harassing incidents above or below which a claim can or cannot be established as a matter of law. Rather, the determination whether a work environment is hostile must take into account "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

■ Plaintiff alleges in her complaint that Bruno stated "Those stupid niggers get on my nerves" and that he "wanted to get those niggers." Doc. 1 at ¶¶ 7–8. Such racist statements clearly would be unwelcome to the plaintiff. However, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citing *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986)).

In *Schwapp*, four incidents of racially derogatory comments occurred in plaintiff's presence, while eight other incidents were known to him second-hand. Finding the incidents that did not occur in plaintiff's presence relevant to his hostile environment claim, the Second Circuit concluded that he had offered evidence sufficient to survive a motion for summary judgment. *Id.* at 111–12. The court stated that "[j]ust as a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment, ... the fact that a plaintiff learns second-hand of a racially derogatory comment ... of a fellow employee or supervisor also can impact the work environment." *Id.* (citing *Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 673, 675 (7th Cir.1993),

and *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir.1997)).

■ In this case, the two remarks attributed to Bruno were not made to plaintiff or in her presence but rather were reported to her by a co-worker. As noted, those statements are not for that reason irrelevant to plaintiff's hostile environment claim. However, this case differs from *Schwapp* in that plaintiff has not alleged that *any* racially derogatory statements were ever made to her or in her presence. In the absence of such evidence, the two remarks that were reported to her are insufficient to support her claim. *Cf. Schwapp*, 118 F.3d at 108; *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568 (2d Cir. 2000) (plaintiff established a prima facie case of hostile work environment when she alleged at least one instance of overhearing a racial epithet and offered affidavits of several other employees who frequently heard the speaker use racial and ethnic slurs); *Rodgers v. Western–Southern Life Ins.*, 12 F.3d 668, 675 (7th Cir. 1993) (plaintiff heard supervisor use the word "nigger" twice and co-worker testified that he had heard supervisor use the word five to ten times); Perry, 115 F.3d at 149 (2d Cir.1997) (plaintiff had experienced several instances of sexual harassment and attempted to present testimony of several co-workers who had also experienced such harassment).

Even assuming the racist comments allegedly made by Bruno could suffice to establish a hostile environment, plaintiff does not have a triable claim because she has no admissible evidence that the remarks were made. The only evidence she offers is her deposition testimony that she was told about the remarks by another employee, Damien Carter. She does not know whether Carter was present when the remarks were made and we have no evidence on the issue from him or anyone

else. Because plaintiff cannot prove that the comments were made, her claim must be dismissed. *See Howley*, 217 F.3d at 155 (citing Fed.R.Evid. 801 and *Sarno v. Douglas–Elliman Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999)).

## State Law Claims

In the absence of a triable federal claim, it ordinarily would be appropriate to dismiss all the remaining state law claims without prejudice. However, the claims in this case are plainly ill-founded and permitting them to be re-filed in state court would be futile.

## Constructive Discharge

 Plaintiff cannot make out a claim of constructive discharge. She was in fact terminated for destroying company property and has admitted that the defendants had a right to terminate her.

## Intentional Infliction of Emotional Distress

 To prevail on her claim for intentional infliction of emotional distress, the plaintiff must establish (1) that the defendants intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of the challenged conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *DeLaurentis v. New Haven*, 220 Conn. 225, 266–67, 597 A.2d 807 (1991). On the present record, a reasonable jury could not find any of these elements. Even assuming that plaintiff could strengthen her showing on some elements of this claim if given an opportunity to do so in state court, it is inconceivable that she could prove the second element, which requires proof of conduct "exceeding all bounds usually tolerated by decent society, of a kind which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Petyan v. Ellis*, 200 Conn. 243, 254 n. 5, 510 A.2d 1337 (1986). Thus, plaintiff is entitled to summary judgment on this claim as well.

## Breach of Oral Contract

 I agree with defendants that the breach of contract claim is without merit. It is undisputed that the plaintiff was an at will employee and that Weed had no authority to enter into an employment contract with her. Furthermore, plaintiff has admitted that Weed never told her she had the job. *See* Local Rule 9(c)(1) Statement ¶ 22. Rather, according to plaintiff's own account, Weed told her he thought she would be the best person for the job but had to interview other applicants in fairness to them and in accordance with company policy. *See* Doc. 50, Ex. B, 400–401. When plaintiff asked him if there would be a pay increase, he replied that he didn't know. *Id.* Crediting this testimony, no reasonable juror could find that the parties came to a meeting of the minds on a binding employment contract.

## Conclusion

For the foregoing reasons, it is hereby ordered that the defendants' motion for summary judgment is granted in full. The complaint is dismissed with prejudice. The Clerk may close the file.