*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DION BERRYMAN; ROBERT BUSH; ANDRE
HIGHTOWER; RONALD LANTON; JESSE SMITH,
     *Plaintiffs-Appellants,*

LEMENZO CLEGG, et al.,

     *Plaintiffs,*

   *v.*

SUPERVALU HOLDINGS, INC.; PETER
GUNDERSON; RICK ZOLL; FRED DUNWOODIE;
CINDY KEYES; JOHN SCHULTZ; TIM DORAN;
SUE ZIMMERMAN; CAROL GIBSON,

     *Defendants-Appellees.*

No. 10-3590

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 05-00169—Walter H. Rice, District Judge.

Argued: December 1, 2011

Decided and Filed: February 24, 2012

Before: SILER, McKEAGUE, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** James R. Greene III, JAMES R. GREENE III & ASSOCIATES, Dayton,
Ohio, for Appellants. Jennifer R. Fuller, THOMPSON HINE LLP, Dayton, Ohio, for
Appellees. Susan R. Oxford, U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** James R. Greene
III, JAMES R. GREENE III & ASSOCIATES, Dayton, Ohio, for Appellants. Teresa
D. Jones, THOMPSON HINE LLP, Dayton, Ohio, for Appellees. Susan R. Oxford, U.S.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for
Amicus Curiae.

     McKEAGUE, J., delivered the opinion of the court, in which SILER, J., joined.
STRANCH, J. (pp. 8–11), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge. Eleven current and former employees of SuperValu Holdings, Inc. ("SuperValu") who are African–American brought suit alleging, among other things, that they were exposed to a racially hostile work environment in SuperValu's warehouses. SuperValu moved for summary judgment as to each employee. In response, the employees submitted a detailed list of the incidents which formed the basis of their hostile environment claims. The events listed were scattered sporadically over twenty-five years. They included vulgar graffiti, overtly racist comments by coworkers, and racially motivated pranks.[1] Although it found these incidents reprehensible, the district court concluded that they did not amount to a hostile work environment and granted summary judgment to SuperValu. Five employees appeal. We affirm.

**I. ANALYSIS**

We review the district court's grant of summary judgment de novo. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 894 (6th Cir. 2004). Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). SuperValu bears the burden of showing the absence of evidence to support at least one essential element of the employees' claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

---

[1]The district court's eleven separate opinions listed the various claims relevant to hostile work environment as to each Plaintiff, having pulled together claims from the Plaintiffs' depositions. For a detailed list of those claims considered by the district court as to Plaintiff Robert Bush, see *Berryman v. SuperValu Holdings, Inc.*, No. 3:05cv169, 2010 WL 1257838, at *3–*4 (S.D. Ohio March 31, 2010). For a detailed list of those claims considered by the district court as to Plaintiff Dion Berryman, see *Berryman v. SuperValu Holdings, Inc.*, No. 3:05cv169, 2010 WL 1257848, at *4–*5 (S.D. Ohio March 31, 2010). For a detailed list of those claims considered by the district court as to Plaintiff Jesse Smith, see *Berryman v. SuperValu Holdings, Inc.*, No. 3:05cv169, 2010 WL 1257849, at *4 (S.D. Ohio March 31, 2010). For a detailed list of those claims considered by the district court as to Plaintiff Andre Hightower, see *Berryman v. SuperValu Holdings, Inc.*, No. 3:05cv169, 2010 WL 1257854, at *4–5 (S.D. Ohio March 31, 2010). For a detailed list of those claims considered by the district court as to Plaintiff Ronald Lanton, see *Berryman v. SuperValu Holdings, Inc.*, No. 3:05cv169, 2010 WL 1257851, at *3 (S.D. Ohio March 31, 2010).

employees must then present sufficient evidence through the pleadings and the materials produced through discovery from which a jury could reasonably find in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is not appropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Title VII offers employees protection from a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (internal quotations omitted). Summary judgment is improper if plaintiff advances evidence of harassment that is "ongoing," "commonplace," and "continuing." *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333–34 (6th Cir. 2008) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)). But "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21–22.

In granting summary judgment, the district court considered all of the employees' claims for each employee individually and limited its analysis to those events that were either perceived by an individual employee or that the employee knew about. The court based its decision to handle summary judgment in this manner on the totality-of-the-circumstances test articulated in *Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999), reasoning that an event should only be considered part of the totality of the circumstances if an individual employee claimed he was aware of it. The plaintiffs on appeal ("Plaintiffs") make only one claim of error, contending the district court erred by choosing not to consider the claims of all employees in the aggregate.[2] We disagree.

---

[2]After listing the separate claims it would consider as to each plaintiff, the district court reasoned that, although reprehensible, the conduct claimed was not "sufficiently severe and pervasive, as a matter of law, to be said to have altered the conditions of [the plaintiffs'] employment." *E.g.*, *Berryman*, 2010

The district court correctly interpreted *Jackson*'s totality-of-the-circumstances test to militate against aggregating the claims of all Plaintiffs. In *Jackson*, a single plaintiff sued her employer alleging racial harassment in the form of racist slurs she had either experienced or heard about, racist graffiti she had seen or learned about, disparate treatment towards African–American employees that Jackson was told about, and offensive behavior she experienced or learned of. *See, e.g.*, *id.* at 651 (stating Jackson overheard slurs); *id.* at 652 (stating Jackson saw graffiti in women's restroom and learned of it in the men's room); *id.* at 654 (stating Jackson was told about disparate job treatment of an African–American colleague); *id.* at 654–55 (describing tampering with the valves Jackson used on the job as well as a physical and verbal assault against her). The district court in *Jackson* awarded judgment as a matter of law to Quanex because Jackson "was neither a witness nor a party" to most of the alleged harassment. *Id.* at 656. But this court rejected such a "myopic view of harassment" that would limit claims only to those things that are "directed at or witnessed by" a particular plaintiff. *Id.* at 660, 659.

Instead, the Sixth Circuit adopted a totality-of-the-circumstances test, pointing to the Supreme Court's decision in *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), in stating that "an employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself." *Jackson*, 191 F.3d at 661 (citing *Meritor*, 477 U.S. at 65–66). So, courts should aggregate hostile work environment claims, considering even those claims that were not directed at a particular

WL 1257848, at *16. The Equal Employment Opportunity Commission filed a brief as amicus curiae taking issue with the conjunctive way in which the district court articulated the test in parts of its opinions, i.e., the use of the phrase "severe *and* pervasive" as opposed to "severe *or* pervasive." We agree that a disjunctive test, i.e., "severe *or* pervasive," is proper. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (observing that "'severe or pervasive' is properly considered in the disjunctive") (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). However, a reading of the district court's opinions shows that, in comparing each of the employees' claims to other cases from this Circuit, the court actually applied the proper, disjunctive standard even though it articulated the standard conjunctively at times throughout the opinions. *See, e.g.*, *Berryman*, 2010 WL 1257848, at *14–16 (comparing Plaintiff Dion Berryman's case to several Sixth Circuit cases, including *Smith v. Leggett Wire Co.*, 220 F.3d 752, 760 (6th Cir. 2000), which articulated the disjunctive "severe or pervasive" standard).

plaintiff and those claims that a particular plaintiff did not witness. *Jackson*, 191 F.3d at 661.

But *Jackson* does not stand for the broader proposition that a group of plaintiffs may aggregate all of their claims regardless of whether they were aware of one another's experiences or not. Quite the contrary. Implicit in the consideration of the totality of the circumstances is that a plaintiff was aware of the harassment that was allegedly directed toward other employees. *See id.* at 661. The *Jackson* court said as much. *See id.* It based its decision on the fact that the Sixth Circuit, in prior decisions, had "credited evidence of racial harassment directed at someone other than the plaintiff when the plaintiff knew a derogatory term had been used." *Id.* at 661 (citing *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1079 (6th Cir. 1999)). The *Jackson* court also reasoned that "'the fact that a plaintiff learns second-hand of a racially derogatory comment or joke . . . can impact the work environment.'" *Id.* (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 111–12 (2d Cir. 1997) (internal citation omitted)). And finally, "evidence that Jackson learned of these incidents clearly demonstrated that . . . she subjectively perceived that her work environment was one hostile to her." *Id.* In short, a plaintiff does not need to be the target of, or a witness to harassment in order for us to consider that harassment in the totality of the circumstances; but he does need to know about it.

It follows that the district court properly declined to aggregate all claims made by all Plaintiffs if they failed to show they were each aware of the harassment claimed by the others. In their response to SuperValu's motion for summary judgment, Plaintiffs submitted an exhibit which they described as a "detailed list of the incidents which form the basis for the Plaintiffs' hostile environment claims." Although the dissent characterizes Plaintiff's list as non-inclusive, this language would tend to indicate that the list was presented to the district court as inclusive of all hostile environment claims. Nonetheless, the district court contemplated not only the items listed in that exhibit, but also additional claims found in Plaintiffs' depositions. *See, e.g.*, *Berryman*, 2010 WL 1257848, at *5 (listing the claim that "[o]n one occasion in 2005, Berryman saw the word 'nigger' written on his work machine" and citing Berryman's deposition).

However, upon review of the record, the district court concluded that Plaintiffs had "point[ed] to nothing to indicate that [they were] aware of any of the acts of harassment alleged by the other Plaintiffs in this litigation, other than those [that were specifically claimed]." *E.g.*, *id.* at 13 n.16.

To secure aggregated review of their claims on summary judgment, Plaintiffs needed to marshal basic evidence to show that they were individually aware of the harassment experienced by other plaintiffs. *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). They failed to do so. It may be tempting to assume, as the dissent does, that due to the public nature of some of the alleged acts of harassment, e.g., graffiti in the bathrooms and on warehouse pallets, Plaintiffs may have been aware of some events they did not mention in their individual depositions. But this assumption is unwarranted. In a physically large and partitioned workplace like the separated warehouses in this case, it is inappropriate for us to infer that Plaintiffs perceived events they did not discuss in their depositions.[3] The most illustrative example is the effigy of an African American supervisor, which was allegedly hung "for all the warehouse to see it." We agree that such a display was repugnant, but none of the named plaintiffs on appeal gave any indication in their depositions that they were even aware of it, despite its allegedly public location and questions prompting them to disclose all such incidents they remembered. We cannot assume Plaintiffs were aware of those things that they did not discuss in hundreds of pages of depositions. Such an assumption would overstep the reasonable inferences we are obliged to draw in favor of the non-moving party on summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On occasion, we have found it reasonable to infer that a plaintiff was affected by behavior not directed at him or her. *See, e.g.*, *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 273–74 (6th Cir. 2009). In *Gallagher*, where a plaintiff claimed a sexually hostile work environment, the district court overlooked the configuration of the

---

[3]The record shows that there are two distinct warehouses, three separate bathrooms, and pallets that cycle in and out of the warehouses. *See, e.g.*, R. 70, Gunderson Dep., at 17; R. 77-4, Doran Aff., at ¶ 3.

workplace, which was such that the plaintiff could not avoid the offensive conduct of her coworkers. *Id.* at 273. Not only was Gallagher aware of the offensive conduct, "she was unavoidably exposed to it." *Id.* Here, the district court noted that the record was devoid of any claim that workers would be unavoidably exposed to the various acts of graffiti, comments, or jokes. *E.g.*, *Berryman*, 2010 WL 1257848, at *5 n.16.

Importantly, the district court did consider those instances in which Plaintiffs gained second-hand knowledge of a particular incident of harassment, precisely as *Jackson* requires. *See Jackson*, 191 F.3d at 661. It contemplated the fact that Plaintiff Berryman "saw one or two pictures of monkeys, a picture of police cars chasing O.J. Simpson, and photos of 'dark people' drawn on boxes and on poles." *Berryman*, 2010 WL 1257848, at *5 (citing Berryman Dep. at 112–13). The court also regarded the fact that Plaintiff Andre Hightower "saw photographs taken of the word 'nigger' written on the warehouse floor, along with a drawing of people with 'large lips, nappy hair.'" *Berryman*, 2010 WL 1257854, at *5 (citing Hightower Dep. at 30–33).[4] That Plaintiffs described some harassment they learned of from other employees reinforces the district court's determination that it could not presume Plaintiffs were aware of events they did not individually claim.

After pulling together evidence from Plaintiffs' depositions as well as their proffered exhibits, the district court properly found that Plaintiffs failed to show they were aware of the majority of harassment alleged by their fellow employees. It then correctly concluded that Plaintiffs' claims should be considered individually. Thus, the Plaintiffs' claim of error is denied.

## II.  CONCLUSION

Accordingly, we **AFFIRM** the district court's decision to grant SuperValu's motion for summary judgment.

---

[4] In addition, the district court considered evidence that Andre Hightower and Dion Berryman were told about racist remarks said to other employees. *E.g.*, *Berryman*, 2010 WL 1257854, at *4. However, the court noted that "the Plaintiff points to no exceptions to the hearsay rule, which would allow the Court to consider these assertions" in determining whether the environment was objectively hostile. *Id.*

—————————

**DISSENT**

—————————

JANE B. STRANCH, Circuit Judge, dissenting.  I respectfully dissent from the majority opinion because I believe the record contains sufficient facts to withstand summary judgment on Plaintiffs' hostile work environment claims.  As the EEOC summarized in its amicus brief, the record demonstrates ongoing repetition of highly offensive racial insults—including the words "nigger," "Buckwheat," "boy," "monkey," and variations on these offensive racial pejoratives—spanning several decades and manifested in several different forms, including verbal insults, written graffiti, insulting caricatures, musical lyrics, and jokes.  Much of this conduct occurred in public areas of the warehouse and was thus either actually seen by many employees or was likely seen by many employees.  For example, an effigy was hung twenty feet from the floor (in an area "where everybody comes to charge their machines") with an accompanying cardboard sign bearing an African-American supervisor's name and the words "nigger supervisor."  The effigy was not removed until several days later, "[long] enough for all the warehouse to see it," according to one of the employees.

I trust it is uncontroversial that the totality of all the incidents alleged by the Plaintiffs would be sufficiently "severe or pervasive" to constitute a hostile work environment.  I am troubled, then, that the Plaintiffs are barred from their day in court, not because of the conduct to which they were subjected, but because their attorney did not undertake the tedious and seemingly unnecessary task of listing each of the numerous incidents separately for the five Plaintiffs in this appeal (not to mention the additional six members of the initial lawsuit), presumably in individual briefs.

I am further concerned because it appears that the Defendant was allowed to create this repetitive-listing burden by the mere expedient of filing separate motions for summary judgment as to each Plaintiff.  The Plaintiffs did not file separate complaints and they would not have had separate trials.  This case was originally filed as a class action lawsuit by all the Plaintiffs and it proceeded as an action by a group of Plaintiffs

concerning *their* work environment.  It begs credulity to suggest that the Plaintiffs were not well aware of each other's problems at work.  Access to one's day in court should not be destroyed by a pleading mechanism that results in a presumption of an individual, segregated work environment for each Plaintiff when, in fact, those Plaintiffs indisputably worked together, shared their work environment concerns with one another, and then joined together to file one lawsuit with the same claims and the same attorney.

This case comes to us at the summary judgment stage at which we need only consider whether "[u]nder the facts as alleged in this case, viewed in their entirety and in their proper context, we believe a rational trier of fact could conclude that [Plaintiffs were] subjected to a hostile work environment."  *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999).  A case should not be summarily dismissed if "at minimum, the allegations raise a question of fact for the jury."  *Id.*  Here, the sheer number of racially-hostile incidents that the Plaintiffs testified occurred in public areas at the same company over many years at minimum raised a question of fact as to whether the Plaintiffs were subjected to a hostile work environment.

This Court has made clear that summary judgment is inappropriate whenever a plaintiff alleges harassment that is "ongoing," "commonplace," and "continuing."  *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333-34 (6th Cir. 2008) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)).  A plaintiff who satisfies this standard need not allege each and every incident, much less actual knowledge thereof, because "when a victim makes allegations of ongoing harassment, the 'inability to recount any more specific instances goes to the weight of [the victim's] testimony, a matter for the finder of facts.'"  *Id.* (same).

I find the sheer number and duration of offensive incidents on the record sufficient to be considered "ongoing."  In addition to the specific types of grossly offensive racial harassment summarized above, the Plaintiffs specifically alleged in their complaint that they were: (1) "routinely assigned to heavy orders despite assurances that the assignments are randomly assigned," (2) "subjected to more drug testing than white employees," (3) "routinely ordered back to work while white employees are ignored by

management, even though everyone started their break at the same time," (4) "never . . . approached about having a supervisory position within Supervalu," (5) "denied training while white employees with less seniority were given training," (6) "disciplined for mistakes or being out of their work area while other white employees are not disciplined for the same actions," and (7) "denied overtime or discouraged from signing up for overtime only to discover that white employees with less seniority worked overtime."

Examples of this ongoing conduct are reviewed and highlighted elsewhere in the record. In Plaintiff Berryman's interrogatory responses, for example, he stated that he was (1) written up for being out of his work area while white employees were not, (2) denied training received by white employees with less seniority, (3) "given [a] larger workload to do by himself while white employees are given [a] smaller workload to do with assistance," (4) told to get back to work when talking to a black co-worker while white employees were allowed to continue talking, (5) subjected to other employees looking up his work statistics and making comments about his statistics and race, despite repeated complaints to supervisors, (6) "discipline[d] for using the word 'bitch' while the white employee . . . he was talking to was not disciplined for using the phrase 'black ass,'" (7) "approached in the break room and told to go back to work by a supervisor . . . who did not instruct the white employees in the break room to go back to work," (8) aware of "job[s] being held for white employees who are not present at the job selection meeting when their names are called while black employees are automatically skipped if not present when their name is called." I believe that the testimony of these types of repeated, racially-motived actions in the workplace, which is basically ignored in the majority's opinion, should have been sufficient to overcome summary judgment under the *Abeita* standard.

To the extent that *Jackson v. Quanex Corp.* requires a plaintiff to prove knowledge of events giving rise to a hostile work environment claim, it squarely holds that a plaintiff must be permitted to introduce evidence from co-workers in order "to present evidence of events at [a company] giving rise to the hostile environment there" from which "reasonable jurors" could conclude that the plaintiff "was the victim of"

such an environment. 191 F.3d 647, 659 (6th Cir. 1999). Such a rule makes good sense in this context because, as the Supreme Court recognized, "the entire hostile work environment encompasses a single unlawful employment practice" rather than discrete isolated events. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002); *see also Jackson*, 191 F.3d at 660 (quoting Black's Law Dictionary 534 (6th ed. 1990)) ("[T]he very meaning of 'environment' is '[t]he surrounding conditions, influences or forces which influence or modify.'"). The Plaintiffs here are merely trying to do through their co-Plaintiffs what the *Jackson* plaintiff was allowed to do with non-plaintiff co-workers: present evidence of the hostile work environment in order to overcome summary judgment. And, as the majority correctly observes, courts should consider in the hostile work environment analysis all incidents about which a plaintiff learns secondhand. *Jackson*, 191 F.3d at 661.

It is true that because the workplace at SuperValu included two warehouses and three bathrooms, SuperValu can dispute whether the Plaintiffs were "unavoidably exposed" to every incident and had "no means of escaping." *See Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 273 (6th Cir. 2009). However, given the number of Plaintiffs, the proximity in which they worked, the public nature of many of the incidents, and the duration of these events, the size of the workplace does not remove this case from the category of cases presenting disputes of material fact that must be decided by the jury. That every event was not specifically mentioned in every deposition or listed under every name in the non-inclusive summary prepared by counsel for our convenience does not and should not alter this outcome.

The egregious facts in this record are sufficient to generate a dispute of material fact as to whether Plaintiffs' work environment was hostile. That is all that is necessary to deny summary judgment to the Defendant. Accordingly, I respectfully dissent.